**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| JAMAA ANTHONY CINQUE, ) | 3:11-cv-00490-LRH-WGC |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| KELLY R. BELANGER, et. al. ) | |
| ) | |
| ) | |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 38.)[1] Plaintiff opposed (Doc. # 44) and Defendants replied (Doc. # 45). In addition, Defendants filed an Errata (Doc. # 46) and Supplement (Doc. # 51) to their motion. Plaintiff filed a response to the Supplement. (Doc. # 52.) After a thorough review, the court recommends that defendants Belanger and Lindberg be dismissed without prejudice and that summary judgment be granted in favor of defendant Perino.

**I. BACKGROUND**

**A. Summary of Action**

Plaintiff originally filed this action in the Sixth Judicial District Court of the State of Nevada, in and for the County of Pershing. (Pl.'s Compl. (Doc. # 1, Ex. B).) It was subsequently

---

[1] Refers to court's docket number. Unless otherwise noted, all page number references are to the page numbers from the docketed version and not Defendants' original page numbers.

removed by Defendants. (Notice of Removal (Doc. # 1).) At all relevant times, Plaintiff Jamaa Anthony Cinque was an inmate in custody of the Nevada Department of Corrections (NDOC). (Doc. # 1, Ex. B at 13.) The events giving rise to this litigation took place while Plaintiff was housed at Lovelock Correctional Center. (*Id.*) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Kelly Belanger, Terry Lindberg and Vance Perino. (*Id.* at 13-14.)

On screening, the court determined that Plaintiff states a colorable claim for deliberate indifference to his safety under the Eighth Amendment. (Screening Order, Doc. # 6.) In Count I, Plaintiff alleges that he corresponded with defendant Belanger about the risk that he faced from a prison gang in LCC--that in the past, other members of that gang had tried to attack Plaintiff in another prison. (Doc. # 1 at 14, 16-17.) Plaintiff alleges that defendant Belanger ignored the risk of harm by classifying Plaintiff to general population. (*Id.* at 17.) Shortly after he was classified to general population, Plaintiff asserts that he was further classified to Unit 4B where members of various street gangs are housed for disciplinary reasons, and defendant Belanger knew she was subjecting Plaintiff to a substantial risk of harm by placing him in this unit. (*Id.*)

In Count II, Plaintiff alleges that he applied for a unit porter's position, and defendant Perino advised him that he would be placed on a waiting list, and he would be moved up the list as other inmates left the unit. (Doc. # 1 at 18.) Over the course of two weeks, Plaintiff observed at least three other inmates get hired by defendant Perino when they came to the unit after Plaintiff. (*Id.*) Plaintiff complained to defendant Perino, and claims that defendant Perino represented that he would fire the inmates that had moved ahead of Plaintiff and that Plaintiff would move up on the list. (*Id.*) Plaintiff then avers that he asked defendant Perino not to fire the inmates because they were all Hispanic, and it would create racial tension, but Plaintiff claims that defendant Perino fired them anyway, telling them it was because Plaintiff had complained. (*Id.*) Plaintiff asserts that he was subsequently threatened on several occasions by Hispanic inmates for causing them to lose their jobs. (*Id.*) Plaintiff goes on to allege that he

2

then tried to be placed in protective custody for his safety, and defendant Lindberg told Plaintiff he had to wait until the grievance process was completed. (*Id.* at 19.) Plaintiff was then placed back in his cell, and asserts that he feared for his safety. (*Id.*) The next day he pleaded again to be placed in protective custody because he feared for his safety, and when he confronted a different officer on duty, his request was granted and he was placed in protective custody. (*Id.* at 19-20.)

**B. Summary of Argument**

**1. Defendants' motion**

Defendants now move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies with respect to his claims that defendants Belanger and Lindberg were deliberately indifferent to risks to his safety; (2) defendant Lindberg did not personally participate in any alleged violation of Plaintiff's rights; and (3) neither defendant Belanger nor defendant Perino violated Plaintiff's Eighth Amendment rights because Plaintiff cannot demonstrate he faced a substantial risk of serious harm and he cannot show that defendant Perino acted in reckless disregard of Plaintiff's safety. (Doc. # 38.)

**2. Plaintiff's opposition**

Plaintiff opposes the motion. (Doc. # 44) First, he asserts that defendant Belanger knew of the threats Plaintiff faced from gang members, but disregarded that knowledge by placing Plaintiff in general population. (*Id.* at 2-3.) He provides a statement in his declaration that upon his arrival to LCC he informed defendant Belanger of the threats made against him that caused him to be placed in protective custody at Southern Nevada Correctional Center. (Doc. # 44 at 7 ¶ 6.)

Second, he argues that the assertion of the defense of failure to exhaust administrative remedies as to defendants Belanger and Lindberg should be denied because it was not timely raised and therefore has been waived. (*Id.* at 3.) Alternatively, he requests that the failure to exhaust be excused or that he be permitted to properly exhaust the matter. (*Id.*)

Third, Plaintiff denies defendant Perino's statement that he never spoke to him about

3

1 threats from other inmates or that if he did, he did not make such statements. (*Id.* at 2.) He
2 provides a declaration stating that defendant Perino did make the statements alleged in his
3 complaint that caused him to be threatened by Hispanic inmates. (*Id.* at 7 ¶ 5.)

Finally, Plaintiff denies defendant Lindberg's argument that he did not make statements to Plaintiff and that he was not working on the day in question. (*Id.* at 2.) He provides a declaration stating that he spoke with defendant Lindberg about his safety and he refused to place Plaintiff in protective custody. (*Id.* at 7 ¶ 4.)

### 3. Defendants' reply

In their reply, Defendants first argue that Plaintiff failed to refute that he did not exhaust his administrative remedies in his claims as to defendants Belanger and Lindberg, and they did not waive their defense. (Doc. # 45 at 2-3.) Next, they assert that Plaintiff did not provide any evidence that defendant Lindberg was deliberately indifferent to his safety. (*Id.* at 3-4.) Finally, they maintain that Plaintiff has not created a genuine issue of material fact with respect to his claim of deliberate indifference against defendant Perino. (*Id.* at 4-8.)

### 4. Amendment of the Complaint and defendant Lindberg's supplement

On January 18, 2013, the court granted Plaintiff's motion seeking to correct the date he allegedly had a conversation with defendant Lindberg from July 3, 2010 to July 6, 2010. (*See* Doc. # 50.) However, defendant Lindberg stated in his declaration in support of Defendants' Motion for Summary Judgment that he was not working on July 3, 2010, but did not unequivocally deny having such a conversation. (Doc. # 38-1.) Therefore, the court afforded defendant Lindberg an opportunity to supplement his declaration. (*See* Doc. # 50.)

Defendant Lindberg filed a supplement on January 31, 2013. (Doc. # 51.) In the supplement, he states that he does not have any recollection of having an interview with Plaintiff regarding his alleged safety concerns during the time period in question. (Doc. # 51 at 4, 11 ¶ 10.) Had Plaintiff approached him with concerns about his safety, defendant Lindberg maintains that he would have immediately had Plaintiff placed in administrative segregation for his protection. (*Id.* at 4-5, 11 ¶ 10.) Defendant Lindberg reiterates that Plaintiff cannot

1 establish that he ever faced a substantial risk of serious harm after defendant Lindberg
2 allegedly denied his request to be placed in protective custody. (*Id.* at 5.) This is evidenced,
3 defendant Lindberg argues, by Plaintiff's allegation that he was placed back in his cell and then
4 when he discussed the matter with Sergeant Olivas the next day, he was placed in protective
5 custody. (*Id.* at 6.) He focuses on the fact that Plaintiff does not allege he was threatened in any
6 manner between the time defendant Lindberg refused his request to be placed in protective
7 custody and the time he was actually placed in protective custody the next day. (*Id.*)

**6. Plaintiff's response**

Plaintiff filed his response to defendant Lindberg's supplement on February 7, 2013. (Doc. # 52.) In it, he maintains that defendant Lindberg violated his Eighth Amendment rights when he refused to place Plaintiff in protective custody. (*Id.*) In opposing defendants' argument that Plaintiff did not face a substantial threat to his safety, he claims that if there was not a threat he would not have been placed in protective custody. (*Id.* at 2.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence

5

in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

6

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

## III. DISCUSSION

**A. Exhaustion- Defendants Belanger and Lindberg**

**1. Legal Standard**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This district has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion.' Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* As such, failure to exhaust is not properly raised in a motion for summary judgment, but if it is so raised, it should be treated as a motion to dismiss. *Ritza*, 837 F.2d at 368 (citations omitted). If the court ultimately finds that Plaintiff has not exhausted his nonjudicial remedies, the proper remedy is dismissal of his claims without prejudice. *Wyatt*, 315 F.3d at 1119-20, as noted in *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Ritza*, 837 F.2d at 368. In *Ritza*, the court noted the distinction between summary judgment and dismissal for matters in abatement as it concerns the court's authority to resolve factual disputes:

> [One] reason why a jurisdictional or related type of motion, raising matter in abatement…,should be distinguished from a motion for summary judgment relates to the method of trial. In ruling on a motion for summary judgment the court should not resolve any material factual issue…If there is such an issue it should be resolved at trial…On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue…and that the court has a broad discretion as to the method to be used in resolving the factual dispute.

*Ritza*, 837 F.2d at 369 (citations omitted). Therefore, the court must treat the exhaustion issue as one raised in an unenumerated 12(b) motion, and is tasked with resolving factual issues that arise.

8

**2. Waiver**

Plaintiff argues that Defendants have waived their exhaustion defense by bringing it at this juncture.

As noted above, failure to exhaust administrative remedies is an affirmative defense that Defendants bear the burden of proving. While Defendants should have raised the defense in an unenumerated motion to dismiss, the court is not precluded from treating it as such when it is raised in a motion for summary judgment. *See Ritza*, 837 F.2d at 368 (citations omitted). Moreover, Defendants are correct that the PLRA does not contain a temporal restriction. Therefore, Plaintiff's waiver argument does not bar Defendants' from raising the exhaustion defense at this time.

**3. Analysis**

Plaintiff alleges that defendant Belanger ignored a risk to his safety by classifying him to general population despite knowing he faced threats from gang members. Plaintiff alleges that after he received alleged threats from Hispanic inmates for causing them to lose their jobs, he requested placement in protective custody but defendant Lindberg told him to wait out the grievance process. He asserts that when he talked to another correctional official the following day, he was placed in protective custody.

Plaintiff does not dispute that he failed to exhaust his administrative remedies with respect to his claims against defendants Belanger and Lindberg. Rather, he argues that Defendants waived this argument (which the court addressed above), or that he should be excused from the exhaustion requirements.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 38-2 at 9-19.) Under the version of AR 740 effective during the time period in question, the procedure consisted of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (*Id.*)

Defendants have provided the declaration of Shana Craspay, who reviewed Plaintiff's

9

1 grievance file, and attests that she did not locate any grievance addressing Plaintiff's allegations
2 that defendant Belanger improperly classified him to general population in spite of threats to
3 his safety or that defendant Lindberg refused to move Plaintiff to protective custody in spite
4 of threats to his safety. (Doc. # 38-2 at 24-25 ¶¶ 6-10.)

While the Ninth Circuit has recognized exceptions to the exhaustion requirement, none of the recognized exceptions are applicable here. *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (citation omitted) (recognizing as exceptions: "administrative procedures were unavailable, that prison officials obstructed [an] attempt to exhaust or that [the inmate] was prevented from exhausting because procedures for processing grievances weren't followed."); *see also Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) ("We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'").

Therefore, the court finds that Plaintiff has failed to exhaust his administrative remedies with respect to defendants Belanger and Lindberg, and recommends dismissal of these defendants without prejudice.

## B. Eighth Amendment Deliberate Indifference to Safety-defendant Perino

The only remaining claim is Plaintiff's Eighth Amendment claim that defendant Perino was deliberately indifferent to a risk to his safety. This claim is centered on Plaintiff's allegation that when he was applying for a porter position, defendant Perino was not observing the customary hiring practices when he gave jobs to several Hispanic inmates who had come to the unit after Plaintiff. When Plaintiff complained to defendant Perino, he claims that defendant Perino fired the Hispanic inmates, telling them it was because Plaintiff had complained, which subjected him to threats from these inmates.

### 1. Legal Standard

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison

10

conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

The prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. A violation of the Eighth Amendment is only found when an objective and subjective component are met. *Id.* First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id.* (citations and quotations omitted). When a plaintiff claims prison official's failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted).

Second, the inmate must satisfy the subjective element. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45. A plaintiff "seeking a remedy for unsafe conditions [need not] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief." *Id.* at 845 (citation and internal quotation marks omitted).

Therefore, in order to meet the burden on summary judgment, a defendant must provide evidence establishing: (1) that the deprivation suffered by plaintiff is not sufficiently serious; or (2) that he or she did not know of and act with deliberate indifference toward plaintiff's risk of harm. *Farmer*, 511 U.S. at 834-35. To avoid summary judgment, a plaintiff must show that the alleged deprivation was sufficiently serious-that he faced a substantial risk of serious harm-

1 and that the defendant's conduct constituted deliberate indifference. *Id*. To prove knowledge 2 of the risk, the inmate may rely on circumstantial evidence. The very obviousness of the risk 3 may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 4 F.3d 1074, 1077 (9th Cir. 1995).

**2. Analysis**

### i. Defendant Perino's declaration and argument

Defendant Perino worked as a Senior Correctional Officer at LCC from 2004 until August of 2010. (Doc. # 38 at 5, Doc. # 46 at 2 ¶¶ 1-2.) During the time period in question, defendant Perino worked the day shift in Unit 4B. (Doc. # 38 at 5, Doc. # 46 at 2 ¶ 5.) As such, he assisted in managing the unit, which included hiring porters who were charged with mopping the unit floor, cleaning showers, taking out trash and assisting with a variety of sanitation matters. (Doc. # 38 at 5, Doc. # 46 at 2 ¶¶ 6-7.) Porter positions were unpaid, but could result in an inmate receiving time off of a sentence. (Doc. # 38 at 5, Doc. # 46 at 3 ¶ 8.) To be eligible for the position, an inmate had to be "notice of charges-free" for thirty days. (Doc. # 38 at 5, Doc. # 46 at 3 ¶ 8.)

In unit 4B, if an inmate desired a porter position, he was instructed to send a kite (request form) to Senior Correctional Officer Charles Williams, who would generate a list of inmates to use for hiring. (Doc. # 38 at 6, Doc. # 46 at 3 ¶ 9.) When an inmate sent a kite requesting to be a porter, his name was put on the bottom of the list. (Doc. # 38 at 6, Doc. # 46 at 3 ¶ 10.) Hiring was done by calling an inmate into the office to see if he still wanted the job. (*Id*.) Defendant Perino hired porters by going down the list, from top to bottom, until the position was filled, noting that the list would fluctuate because of inmates leaving the unit or receiving a notice of charges. (Doc. # 38 at 6, Doc. # 46 at 3 ¶ 11.) Defendant Perino had to relieve inmates of their porter positions on occasion, and he would inform them of the reason they were being relieved, including exhibition of poor attitude and/or poor work performance. (Doc. # 38 at 6, Doc. # 46 at 3 ¶ 13.)

Defendant Perino denies that he had any conversation with Plaintiff stating that he

12

1 would fire certain inmates, or where Plaintiff pleaded with him not to fire these inmates
2 because it would cause problems, and further denies that he fired inmates telling them that it
3 was because Plaintiff had complained about their hiring. (Doc. # 38 at 6, Doc. # 46 at 3-4 ¶¶
4 14-15.) He also denies that Plaintiff told him that he was subsequently threatened by a number
5 of Hispanic inmates for causing them to lose their jobs. (*Id.*) In addition, Defendant Perino
6 maintains that based on his training and experience, he was aware that such information would
7 have endangered his staff and inmates, and he would not have conveyed this information to
8 other inmates if it had been relayed to him. (*Id.*)

9       Defendant Perino then argues that Plaintiff cannot demonstrate that he actually faced
10 a substantial risk of serious harm when defendant Perino allegedly made comments to other
11 inmates that Plaintiff was the reason for their termination. (Doc. # 38 at 14-15.) Instead,
12 defendant Perino argues that Plaintiff has merely included conclusory allegations that he was
13 threatened, unsupported by any evidence. (*Id.*) Defendant Perino asserts that Plaintiff did not
14 file an emergency grievance related to his supposed fear for his safety, as he could have done
15 (Doc. # 38 at 15, Doc. # 46 at 4 ¶ 16.) In addition, Plaintiff's grievance related to this issue was
16 not focused on the alleged fear of harm, but on the fact that defendant Perino's purported
17 conditions for hiring Plaintiff. (Doc. # 38 at 15.) Defendant Perino also claims that Plaintiff's
18 allegations are unsupported because he has never identified a specific threat by any particular
19 inmate as a result of defendant Perino's alleged conduct as he was required to do pursuant to
20 Administrative Regulations 507 and 509. (*Id.* at 15-16.)

21       Next, defendant Perino points out that there is no evidence of "mental stress, emotional
22 depression, fear and mental anguish" from defendant Perino's alleged conduct in Plaintiff's
23 medical records. (Doc. # 38 at 16.)

24       Finally, defendant Perino argues that there are no facts to support the subjective
25 element of Plaintiff's claim--that he knew of and disregarded an excessive risk to Plaintiff's
26 safety. (Doc. # 38 at 17.)
27 ///
28       13

### ii. Plaintiff's opposition

Plaintiff, in his opposition, disputes defendant Perino's statement that he never had conversations with Plaintiff that led him to receive threats from Hispanic inmates. (Doc. # 44 at 4, 7 ¶ 5.)

### iii. Conclusions

The court finds that defendant Perino presented evidence in his declaration sufficient to negate the objective and subjective components of Plaintiff's Eighth Amendment claim against him. With respect to the objective component, defendant Perino pointed out that Plaintiff's Complaint only contains conclusory allegations that he was threatened. He then notes that Plaintiff did not file an emergency grievance related to his fear for his safety, and when he filed a regular grievance, it was centered not on his safety, but on his job prospects as a prison porter. Next, defendant Perino asserts that Plaintiff never identified a specific threat by a particular inmate, and points to a lack of evidence in Plaintiff's medical records of claimed emotional distress and fear as a result of defendant Perino's alleged conduct.

As to the subjective element, defendant Perino provides his own declaration which says he never had these conversations with Plaintiff; he never told any other inmates that they were being fired because of Plaintiff's complaints; and even if he had these conversations with Plaintiff he would not have commented on Plaintiff's complaints to the other inmates because that was not how he was trained and he knew it could affect the safety of staff and inmates.

This shifts the burden to Plaintiff to establish the existence of a genuine issue of material fact. As indicated above, Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations unsupported by factual evidence. While all inferences are to be drawn in Plaintiff's favor, if the evidence is not significantly probative, summary judgment may be appropriate.

While a factual issue may exist as to the subjective element of Plaintiff's claim--whether defendant Perino engaged in the conversations that Plaintiff claims led to the alleged threats by Hispanic inmates and then refused to put Plaintiff in protective custody--the court finds that

14

Plaintiff has not raised a genuine issue of material fact as to the objective component of his claim--whether he faced a substantial risk of serious harm. Other than the statement in his declaration that he did have conversations with defendant Perino that led to him receiving threats from Hispanic inmates, Plaintiff presents no additional evidence to support his claim that he was subjected to a substantial risk of serious harm. Plaintiff does not identify what the threats consisted of, when they were made, by whom they were made, or how they made him feel. While Plaintiff may not be required to identify those who threatened him, he is at least required to reveal the nature of the threats so the court can assess whether he has raised a genuine issue of material fact as to the substantial risk of serious harm component of his claim. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

Because Plaintiff has failed to raise a genuine issue of material fact as to the objective component, which is necessary to establish his claim under the Eighth Amendment, the court recommends that summary judgment be granted in favor of defendant Perino.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DISMISSING WITHOUT PREJUDICE** defendants Belanger and Lindberg and **GRANTING SUMMARY JUDGMENT** in favor of defendant Perino.

///
///
///
///
///
///
///
///
///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: April 12, 2013.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE